THE AMERICAN INSTITUTE OF CER-
TIFIED PUBLIC ACCOUNTANTS,
Plaintiff,

v.

AFFINITY CARD, INC. Defendant.

No. 98 CIV. 2141(SAS).

United States District Court,
S.D. New York.

July 16, 1998.

**374**

Anthony J. Costantini, Duane Morris & Heckscher, LLP, New York, NY, for Plaintiff.

William P. Larsen, III, D'Amato & Lynch, New York, NY, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, The American Institute of Certified Public Accountants ("AICPA"), filed a complaint sounding in breach of contract against defendant, Affinity Card, Inc. ("Affinity"), on March 24, 1998. An affidavit of service was filed on April 7, 1998. The defendant did not move or answer in the time permitted, and the plaintiff applied for a default judgment pursuant to Fed.R.Civ.P. 55 and Local Civil Rule 55.1. On May 11, 1998, a default judgment was entered against the defendant. The defendant now moves pursuant to Fed.R.Civ.P. 55(c) and 60(b)(4) to vacate the judgment of default as void for lack of personal jurisdiction due to ineffective service of process. For the reasons stated below, the motion is granted.

### I. Background

This action arises out of a tripartite contract entered into on November 5, 1992 by the plaintiff, defendant, and Marine Midland Bank. *See* Complaint at ¶ 5. The contract established a Visa credit card marketed to AICPA members with Affinity's promotional assistance and issued by Marine Midland. AICPA and Affinity are entitled to a share in the fees collected from the program's participants. *See id.* at ¶¶ 5, 7. The plaintiff alleges that the defendant has improperly withheld information concerning these fees and has failed to make payments as obligated. *See id.* at ¶ 9.

The plaintiff attempted service upon the defendant on March 30, 1998. Peter Murphy, a professional process server, handed the summons and complaint to one Patrick McDonald at Affinity's principal place of business in Wellesley, Massachusetts. *See* Affidavit of Peter Murphy in Support of Motion to Vacate Default Judgment ("Murphy Aff.") at ¶¶ 1–8. The plaintiff subsequently filed an affidavit of service that identified McDonald as Assistant Vice–President of Affinity. McDonald, however, is not employed by Affinity. He is the Assistant Vice–President of Primecard Corporation ("Primecard").

Affinity shares a suite of offices with three other companies, including Primecard. *See* Affidavit of Greg Miller (President and CEO, Affinity) in Support of Motion to Vacate Default Judgment ("Miller Aff.") at ¶ 15. The four companies share a receptionist's area, but the most significant link joining them is Greg Miller, president, treasurer, and at least a partial owner of all. *See id.* at ¶¶ 2, 11.

According to the plaintiff, Murphy entered the office and was greeted by McDonald at the receptionist's area. *See* Murphy Aff. at ¶ 3. He asked McDonald "if Gregory Miller, Affinity Card's president, was there." *Id.* at ¶ 3. After being informed that Miller was out, he told McDonald that he had some important legal papers for Affinity Card and Miller, and asked whether there was anyone there that could accept the papers for Affinity Card. *See id.* at ¶ 4. McDonald said he could accept the papers and would make sure

Miller received them that afternoon. *See id.* Murphy then showed the summons and complaint to McDonald and asked for his name and title. *See id.* at ¶ 5. McDonald said he was Assistant Vice–President, and Murphy assumed that McDonald meant Assistant Vice President of Affinity. *See id.* After that exchange, Murphy handed the summons and complaint to McDonald. *See id.* He is not certain if the documents were contained in an envelope as he handed them over, but is certain that if they were, he would have first shown them to McDonald. *See id.*

The defendant's version of the events is slightly different. The defendant contends that after McDonald identified himself as Assistant Vice–President, Murphy said "that will do," or words to that effect, and handed over a sealed white envelope addressed to Miller. *See* Affidavit of Patrick McDonald (Assistant Vice–President, Primecard) in Support of Motion to Vacate Default Judgment ("McDonald Aff.") at ¶ 3. According to the defendant, Murphy did ask for Miller, but never asked McDonald if he could accept service for Affinity Card or Miller, never indicated the nature or purpose of the delivery, and never showed the documents to McDonald. *See id.* at ¶¶ 3, 4. McDonald placed the sealed, unopened envelope in Miller's box later that day. *See id.*

## II. Discussion

Defendant now moves for an order vacating the default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b)(4). After the entry of a default judgment, Rule 55(c) grants a litigant the right to petition a court to vacate the judgment upon a showing of good cause and in accordance with Rule 60(b). *See* 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2692 at 464 (2d ed.1983). Subsection four of Rule 60(b) provides that a court may relieve a party from a final judgment if the judgment is void. *See* Fed.R.Civ.P. 60(b)(4). Other grounds for relief provided by Rule 60(b) include mistake, surprise, excusable neglect, newly discovered evidence, fraud, satisfaction, or any other justifying reason. *See* Fed.R.Civ.P. 60(b). A motion predicated on subsection four is unique, however, in that relief is not discretionary and a meritorious defense is not necessary as on motions made pursuant to other 60(b) subsections. *See Covington Indus., Inc. v. Resintex A.G.,* 629 F.2d 730, 732 n. 3 (2d Cir.1980).

Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant. *See Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). A judgment entered against a party not subject to the personal jurisdiction of the court is a nullity. *See Covington,* 629 F.2d at 732. Hence, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law. *See Howard Johnson International, Inc. v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998).

In a federal diversity action, service of process upon a corporation may be made pursuant to Fed.R.Civ.P. 4(h)(1), or pursuant to the law of either the state in which the district court sits, or in which service is effected. *See* Fed.R.Civ.P. 4(e)(1), 4(h)(1). The issue raised here is therefore straightforward: was service of process effective pursuant to Fed.R.Civ.P. 4(h)(1), New York's long arm statute, or the laws of Massachusetts?

Before analyzing the sufficiency of the attempted service, it should be noted that the Second Circuit has expressed on numerous occasions its "preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995); *accord Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993); *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir. 1981). Default judgments have been described as "the most severe sanction which the court may apply, and its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited." *Securities and Exch. Comm'n v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975) *quoting Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 614 (2d Cir.1964); *accord Cody,* 59 F.3d at 15. Although there is no judicial discretion when considering a jurisdictional question such as the sufficiency of process, when confronted

with equally reliable but conflicting accounts, courts should resolve any doubts in favor of the party seeking relief under Rule 60(b). *See Enron,* 10 F.3d at 95; *Sony Corp. v. Elm State Elec., Inc.* 800 F.2d 317, 320 (2d Cir. 1986). Accordingly, where the parties' accounts of the attempted service differ but both are inherently plausible, and there is nothing in the record upon which to judge the veracity of either version, a court should credit the version of the party seeking to vacate the default.

### A. Service of Process Under Federal Rule 4(h)(1)

According to the Federal Rules of Civil Procedure, service of process may be made upon a corporation by delivering copies of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized to receive service of process. *See* Fed.R.Civ.P. 4(h)(1). The burden is on the plaintiff to show a basis for an inference that the defendant has authorized a particular person to accept service of process on its behalf. *See Scot Lubricants of Pa., Inc. v. YPF, S.A.,* 95 Civ. 9602, 1996 WL 278082 (S.D.N.Y. May 24, 1996) *citing Santos v. State Farm Fire and Cas. Co.,* 902 F.2d 1092, 1094 (2d Cir.1990).

McDonald does not come within the letter of the statute. He is neither employed by nor expressly authorized to accept service on behalf of the defendant. The plaintiff argues that service was nevertheless effective and cites to several cases that have construed service of process rules liberally. Indeed, Rule 4(h)(1) does not require rigid formalism, and there are many cases where courts have exercised personal jurisdiction over defendants although service of process was delivered to someone other than the persons listed in the rule. *See, e.g., Solospar, Inc. v. Equinox Fitness Ctr.,* 96 Civ. 9449, 1998 WL 307377 (S.D.N.Y. June 10, 1998); *Kuhlik v. Atlantic Corporation, Inc.,* 112 F.R.D. 146 (S.D.N.Y.1986); *Koninklijke Luchtvaart Maatschappij · N.V. v. Curtiss–Wright Corp.,* 17 F.R.D. 49 (S.D.N.Y.1955). The rule does not require that service be made solely on a restricted class of formally titled officials, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive services. *Montclair Electronics, Inc. v. Electra/Midland Corp.,* 326 F.Supp. 839 (S.D.N.Y.1971).

In *Insurance Co. of N.A. v. S/S Hellenic Challenger,* 88 F.R.D. 545 (S.D.N.Y.1980), the defendant sought to vacate a default judgment on the ground of defective service because the person served was not properly authorized to receive service and had misplaced and lost the summons and complaint. This Court ruled that service had nevertheless been properly effected, reasoning that the person served was "a representative of defendant 'well-integrated' into the organization and quite familiar with the formalities associated with the receipt of service of summonses and complaints. . . ." *Id.* at 548.

McDonald had been working at Primecard for just a few months, he had no responsibilities for Affinity, and had never even heard of it. He did not hold himself out as a representative of Affinity or authorized to receive service on its behalf. Nor did he learn that the envelope which he placed in Miller's mailbox contained important legal documents until several weeks later. He was not sufficiently "integrated" with Affinity to allow the inference that he had authority to receive service.

In every case cited by the plaintiff, the person served was employed by the defendant corporation. As stated, McDonald was not employed by Affinity. The plaintiff in *Solospar* did not serve an employee of the defendant, but rather served the employee of a separate, unaffiliated corporation. There, this Court denied a motion to dismiss for lack of jurisdiction due to ineffective service of process, reasoning that the defendant had in fact received adequate notice, and the process server reasonably believed the person served to be the defendant's managing agent. The Court granted leave for the defendant to renew the motion upon further development

of the factual record. 1998 WL 307377 at *4. Interestingly, the *Solospar* court favored a resolution of the claims on the merits.

Many of the rulings cited by the plaintiff were made on motions to dismiss, not on motions to vacate default judgments. Given the courts' preference for resolution on the merits, the procedural posture is of paramount importance. The court in *Solospar* acknowledged that "as a general matter, any doubt as to whether a default should be granted or vacated should be resolved in favor of the defaulting party." *Solospar*, 1998 WL 307377 at *2. Of course on a motion to dismiss, all doubts are resolved in favor of the nonmoving party.

The plaintiff places great weight on the fact that Greg Miller, the President of Affinity, actually received the summons and complaint on the very same day that the papers were delivered to McDonald. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Vacate Default Judgment ("Pl. Mem.") at 9. In *Durant v. Traditional Invs., Ltd.*, 88 Civ. 9048, 1990 WL 33611 (S.D.N.Y. Mar. 22, 1990), this Court recognized the significance of actual notice. Citing to a procedural treatise, Judge Leisure wrote that "when a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service." *Id.* at *3 (*citing* Wright & Miller, *Federal Practice & Procedure*, § 1063 at 225).

The actual receipt of the summons and complaint is an important factor in determining the effectiveness of service. *See Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1251 (S.D.N.Y.1977) *citing Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). However, actual notice of the action will not, in itself, cure an otherwise defective service. *See Omni Capital Int'l v. Rudolf Wolff and Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *see also, Buggs v. Ehrnschwender*, 968 F.2d 1544 (2d Cir.1992); *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371 (2d Cir.1978); *Rafferty v. Halprin*, 90 Civ. 2751, 1990 WL 165757 (S.D.N.Y. Oct. 19, 1990).

Plaintiff attempts to salvage its opposition to this motion by arguing that Primecard and Affinity are the virtual alter egos of Greg Miller—as such, effective service upon Primecard should be deemed to constitute effective service upon Affinity. *See* Pl. Mem. at 5. Because an alter ego is considered an indistinguishable entity, jurisdiction over one company constitutes jurisdiction over its alter egos. *See Northern Tankers Ltd. v. Backstrom*, 901 F.Supp. 72 (D.Conn.1995).

Neither party raised choice of law as an issue, but it is well settled that federal district courts sitting in diversity apply the choice of law principles of the state in which they sit. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir.1995).

In Massachusetts, corporate form will be disregarded only i) when there is an active and direct exercise of pervasive control by the representatives of one corporation over the activities of another and there is some fraudulent or injurious consequence; or ii) when there is a confused intermingling of the activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities. *See Birbara v. Locke*, 99 F.3d 1233, 1238 (1st Cir.1996) (*citing My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748, 752 (1968)). The corporate veil will only be pierced if it is necessary to do so in order to prevent a gross inequity. *See Spaneas v. Travelers Indem. Co.*, 423 Mass. 352, 668 N.E.2d 325, 326 (Mass.1996); *Berger v. H.P. Hood, Inc.* 416 Mass. 652, 624 N.E.2d 947, 950 (1993) (corporate form will be respected absent "compelling reason of equity" to do otherwise).

Plaintiff notes that Miller served as an officer and director of both corporations, and that the companies share some employees and a common address and phone number. These facts are insufficient to overcome the

presumption of independence given to corporate entities. Absent additional evidence of the intermingling of corporate activities, or pervasive control of one entity by the other with fraudulent results, the Court must presume Primecard's independence and treat Affinity and Primecard as separate entities.

### B. Service Under New York's Long Arm Statute

New York provides for specific jurisdiction over a foreign corporation that "transacts any business within the state or contracts anywhere to supply goods or services in the state," but only where the cause of action arises out of the aforesaid transaction. N.Y. C.P.L.R. § 302(a)(1) (McKinney 1998). If these conditions are met, service may be made outside New York in the same manner as service is made within the state. See id. § 313. Under New York law, service may be made upon a corporation by delivering the summons to an officer, director, managing or general agent, cashier, or anyone authorized by appointment or law to receive service. See id. § 311(a)(1).

Affinity is amenable to service pursuant to New York's long arm statute, having contracted to provide services in New York. It is well settled under New York law that service is effective where the process server reasonably relies on an employee's representations that she is authorized to receive service of process on behalf of the defendant. See Fashion Page Ltd. v. Zurich Inc. Co., 50 N.Y.2d 265, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980); Evergreen Marine Corp. v. Welgrow Int'l, Inc., 942 F.Supp. 201, 205 (S.D.N.Y.1996). As under the federal rules, service of process upon a non-employee who makes no representations as to authorization to receive service is not effective. Thus, plaintiff's service of process was ineffective under New York law.

### C. Service Under Massachusetts Law

Massachusetts provides that service upon a corporation may be made by delivering a copy of the summons and complaint "to an officer, to a managing or general agent, or to a person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process..." Mass. R. Civ. P. 4(d)(2). This language largely parallels the federal rules, but Massachusetts courts have construed the language narrowly. See, e.g., Kane & Kane, Inc. v. Norwood Racquetball Dev. Corp., 1992 Mass.App. Div. 189 (1992) (process ineffective where employee of defendant corporation upon whom complaint was served was neither clerk nor agent); Donahue v. Sam Cash Enters., Inc., 1990 Mass.App. Div. 101 (1990) (granting vacatur of default judgment where service made on employee who told process server he was authorized, but in fact was not); Metivier v. McDonald's Corp., 16 Mass.App.Ct. 916, 449 N.E.2d 1241 (1983) (granting vacatur of default where service made on employee of subsidiary of defendant). Given the relatively restrictive interpretation of the Massachusetts courts, service upon a non-employee is ineffective under Massachusetts standards.

### III. Conclusion

The motion to vacate the default judgment is granted. The plaintiff technically has failed to effect proper service of process. Until proper service is effected, this Court has no jurisdiction over the defendant. However, as the Court may grant relief "upon such terms as are just," Fed.R.Civ.P. 60(b), and in light of the plaintiff's good faith belief that service had been properly effected, this vacatur is conditioned upon defendant's agreement to accept service on its attorney. Such service shall be made within seven (7) days of this Order. A conference is scheduled for August 12, 1998 at 4:30 p.m.

SO ORDERED.